Klaus H. Hamm, OSB No. 091730
klaus.hamm@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon St., Ste. 1600
Portland, Oregon 97204
Telephone: (503) 595-5300
Facsimile: (503) 595-5301

Jennifer Seraphine (*pro hac vice* to be filed)
seraphine@turnerboyd.com
Jacob Zweig (*pro hac vice* to be filed)
zweig@turnerboyd.com
TURNER BOYD SERAPHINE LLP
155 Bovet Road, Suite 750
San Mateo, California 94402
Tel: (650) 521-5930
Fax: (650) 521-5931

Attorneys for Plaintiff Align Technology, Inc.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### PORTLAND DIVISION

| | |
|---|---|
| ALIGN TECHNOLOGY, INC., | Civil Action No. _____ |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **(1) Trademark Infringement in Violation of 15 U.S.C. § 1114** |
| DISCHINGER ORTHODONTICS, P.C. and DR. WILLIAM DISCHINGER, | **(2) Trademark Counterfeiting in Violation of 15 U.S.C. § 1114** |
| Defendants. | **(3) Trademark Dilution in Violation of 15 U.S.C. § 1125(c)** |
| | **(4) False Designation of Origin / False Advertising in Violation of 15 U.S.C. § 1125(a) (Passing Off)** |
| | **(5) Common Law Trademark Infringement and Unfair Competition** |
| | **(6) Trademark Dilution in Violation of O.R.S. § 647.107** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Align Technology, Inc. ("Plaintiff" or "Align") for its Complaint against Dischinger Orthodontics, P.C. ("Dischinger Orthodontics") and Dr. William Dischinger ("Dr. Dischinger") (collectively, "Defendants") alleges as follows:

## INTRODUCTION

1.      This case goes directly to the intent of the trademark law: to protect consumers—in this case prospective dental and orthodontic patients—from confusion as to the source of products and services of interest, and from parties who cause such confusion by misusing another party's trademarks.

2.      Align brings this case because Defendants are unlawfully using its federally registered and famous Invisalign® trademarks to pass off other clear aligner systems as if they are Align's, or as if they are affiliated with or sponsored by Align.

3.      Indeed, Defendants go so far as to brag about capitalizing on the Align and Invisalign® name and brand at the expense of unsuspecting patients. Accordingly, Align brings this case to protect patients from this confusion and to protect and enforce its registered trademarks, and seeks injunctive relief stopping Defendants from continued unlawful trademark infringement and related acts, which have caused and will continue to cause harm unless enjoined.

4.      Align also seeks to recover damages that it has and will continue to suffer if Defendants' conduct is not stopped. Align has invested significantly in both its technology and its marketing of its Invisalign® clear aligner systems. Defendants' unlawful conduct has resulted in harm to Align, on information and belief including damages in excess of seven million dollars ($7,000,000). Furthermore, because Defendants' infringement is and was willful

and also because Defendants' activities constitute counterfeiting, these damages should properly be trebled to no less than twenty-one million dollars ($21,000,000) under the Lanham Act.

**NATURE OF THE CASE**

5.      This case arises out of Defendants' improper efforts to mislead prospective patients into believing that Defendants and/or their product and/or service offerings are affiliated with, endorsed by, sponsored by, or approved by Align by featuring Align's federally registered, famous, and incontestable Invisalign® and Invisalign Teen® trademarks in their advertising and promotional materials.

6.      Defendants misrepresent an affiliation with Align and its Invisalign® system, including by making it appear to prospective patients that they are offering the Invisalign® system.  Upon information and belief, once they have enticed prospective patients to their offices using the Invisalign® and Invisalign Teen® trademarks, Defendants then do a bait-and-switch, substituting Spark clear aligners from Ormco Corporation ("Ormco") instead.  Ormco offers a clear aligner system that Ormco claims is an alternative to Align's Invisalign® system.

7.      Defendants also dilute Align's famous Invisalign® and Invisalign Teen® trademarks through their use of these trademarks that weakens their distinctiveness, including by advertising and offering "Invisalign® Spark Clear Aligners" and "Invisalign® Teen Spark Clear Aligners," products that do not exist.

8.      Defendants' unlawful and infringing activities have caused and will continue to cause harm to consumers, as well as to cause both pecuniary and irreparable harm to Align if not enjoined by the Court.

## JURISDICTION AND VENUE

9.      This action arises under the federal Trademark Act, 15 U.S.C. § 1051, et seq.

This Court has subject matter jurisdiction over this action and the claims asserted herein pursuant

to at least 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338(a) and (b).  This Court also has

jurisdiction over the Oregon state law claims as these claims are related to the claims brought

under the Lanham Act, so form part of the same case or controversy, and are within the Court's

supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

10.      This Court has personal jurisdiction over Defendants because Defendants have a

continuous, systematic, and substantial presence within this District and within Oregon,

including physical offices and residences in this District.  On information and belief, Defendant

Dischinger Orthodontics has its principal place of business in this District and is incorporated in

Oregon.  On information and belief, Defendant Dr. William Dischinger resides in Oregon.

11.      Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391 and/or

1400, because a substantial part of the events giving rise to the claims herein occurred within this

District, and because a substantial number of consumers who reside in this District may be

confused by Defendants' infringing conduct.  Further, Defendants reside in, have their principal

place of business in, and have infringed Align's registered trademarks and committed the other

acts complained of herein, all within this District.

## PARTIES

12.      Plaintiff Align is a Delaware corporation with its principal place of business at 410

North Scottsdale Road, Suite 1300, Tempe, Arizona 85288.

13.    On information and belief, Defendant Dischinger Orthodontics, P.C. is a professional corporation registered in Oregon with its principal place of business at 3943 SW Douglas Way, Lake Oswego, Oregon 97035.

14.    On information and belief, Defendant Dischinger Orthodontics, P.C. has another place of business at 8885 SW Canyon Rd #125, Portland, Oregon 97225.

15.    On information and belief, Defendant Dr. William Dischinger is a resident of Oregon.

## FACTUAL ALLEGATIONS

### A. Align and the Invisalign® System

16.    Plaintiff Align is a global medical device company founded in 1997 and engaged in inventing, developing, making, and selling innovative products that help dental and orthodontic professionals deliver effective, cutting-edge options to their patients.  Align is perhaps best known for its Invisalign® clear aligner system for straightening teeth.

17.    The Invisalign® system is a proprietary method for treating malocclusion based on a series of doctor-prescribed, custom manufactured, clear plastic, removable aligners.  The Invisalign® clear aligners can be removed (for eating and teeth cleaning), without the metal brackets and wires traditionally used in braces.  Align's Invisalign® system has shown proven results based on its lengthy use, and is FDA-cleared, setting it apart from other clear aligner systems.

18.    Align has provided its high-quality medical and dental devices through doctors to patients for over twenty-five years.  Over this time, Align has invested more than a billion dollars in innovation, including developing its state of the art proprietary materials, intraoral scanners for producing accurate 3D models of patients' mouths, predictive software, and other research

and development.  Align continues to spend more than $100 million annually on research and development to provide patients the best possible treatment options.  Align has treated over 17 million patients world-wide, and has built a stellar reputation and acquired substantial goodwill, in connection with the Invisalign® trademarks.

19.    Align offers its Invisalign® system exclusively through authorized dentists and orthodontists who are trained and provided support by Align.  Authorized providers benefit from their affiliation and endorsement by Align, from Align training services and ongoing support, and also from the name recognition and reputation that offering the Invisalign® system provides.

20.    Market research establishes that patients frequently select providers based on the fame of the Invisalign® system, including the associated excellent reputation and strong goodwill, and that patients also select providers based on their affiliation with Align and ability to offer the Invisalign® system.  Many prospective patients ask for the Invisalign® system by name.

21.    Align has devoted a tremendous amount of time and resources—including technical research and development and design resources—to develop its cutting-edge technology and to promote its branded products.

22.    Align has also invested hundreds of millions of dollars in product marketing; advertising, including media advertising; sales force compensation; marketing personnel-related costs; and clinical education.  For example, Align has invested over $1.3 billion in advertising its Invisalign® system between 2012 and 2023—from social media presences to team and league sponsorships with the NFL, NBA, NHL, and U.S. Ski & Snowboard team.  Align's Invisalign® brand was a sponsor of the NFL Super Bowl for the 2021–22, 2022–23, and 2023–24 seasons.

23.    Align's significant investments and high-quality standards have resulted in considerable customer goodwill and a superior reputation in the industry.

**B.  Align's INVISALIGN Trademarks**

24.    Align has established and invested significantly in numerous registered and otherwise legally protectable trademarks in connection with its products, including its Invisalign® family of marks.

25.    Align is the owner of incontestable U.S. Trademark Registration No. 2409473, registered on November 28, 2000, for INVISALIGN for use in connection with "Dental apparatus, namely plastic orthodontic appliance."

26.    Align is the owner of incontestable U.S. Trademark Registration No. 3060471, registered on February 21, 2006, for INVISALIGN for use in connection with "Computer software, namely digital imaging software used to depict tooth movement and proposed treatment plan; computer software used to provide, track and modify proposed courses of orthodontic treatment and patient data and information related thereto."

27.    Align is the owner of incontestable U.S. Trademark Registration No. 3191195, registered on January 2, 2007, for INVISALIGN for use in connection with "Training in the use of orthodontic appliances; and Orthodontic and dentistry services."

28.    Align is the owner of incontestable U.S. Trademark Registration No. 3418121, registered on April 29, 2008, for INVISALIGN for use in connection with "Custom manufacture of orthodontic appliances, dental laboratory services."

29.    Align is the owner of incontestable U.S. Trademark Registration No. 3911988, registered on January 25, 2011, for INVISALIGN for use in connection with "Computer software, namely, digital imaging software used to depict tooth movement and proposed

treatment plans; computer software used in creation of individually customized courses of orthodontic treatment; computer software used to provide, track and modify proposed courses of orthodontic treatment and patient data related thereto;" and "Dental apparatus, namely, orthodontic appliances;" and "Custom manufacture of orthodontic appliances; dental laboratory services;" and "Training in the fields of dentistry and orthodontia;" and "Dentistry; orthodontic services; consultation services in the fields of dentistry and orthodontia."

30.    Align is the owner of incontestable U.S. Trademark Registration No. 4025403, registered on September 13, 2011, for INVISALIGN for use in connection with "Consultation services in the fields of dentistry and orthodontia."

31.    Align is the owner of incontestable U.S. Trademark Registration No. 3627894 registered on May 26, 2009, for INVISALIGN TEEN for use in connection with "dental apparatus, namely, orthodontic appliance" and "dentistry, orthodontic services."

32.    Align is the owner of incontestable U.S. Trademark Registration No. 3661970, registered on July 28, 2009, for INVISALIGN TEEN for use in connection with "Dentistry; orthodontic services; consultation services in the fields of dentistry and orthodontia."

33.    Align is the owner of incontestable U.S. Trademark Registration No. 4767183, registered on July 07, 2015, for INVISALIGN TEEN for use in connection with "Dentistry; orthodontic services; consultation services in the fields of dentistry and orthodontia."

34.    The marks identified in the preceding paragraphs are collectively referred to herein as the "INVISALIGN Marks."

35.    The INVISALIGN Marks have been continuously used in interstate commerce and have never been abandoned.

36.     The INVISALIGN Marks have become famous throughout the United States due to the duration, extent, and geographical reach of advertising and publicity, the amount, volume, and geographical extent of Align's sales, the INVISALIGN Marks' degree of recognition, and the registration of the INVISALIGN Marks.

37.     As of June 30, 2022, INVISALIGN is the number one doctor-recommended clear aligner brand in the world, based on a global survey of 1,786 doctors (dentists and orthodontists who use clear aligners) by IQVIA in NA, EMEA, LATAM, and APAC.

38.     Due to its extensive marketing, the INVISALIGN Marks are well known not only to dentists and orthodontists but to consumers, including potential patients, as well.

39.     For example, in 2017, Align launched "Made to Move," a multi-million dollar marketing campaign aimed at increasing awareness of the Invisalign® brand among teenagers and their parents.  *See* Exhibit A ("Align Technology Launches Invisalign Brand Marketing Campaign to Challenge Metal Braces as the Status Quo," Align Press Release, May 9, 2017).

40.     In 2018, the "Made to Move" campaign won Platinum and Agency Elite marketing awards from PRNEWS.  *See* Exhibit B ("Invisalign 'Made to Move' Teen Influencer Campaign," PRNEWS, 2018).  A PRNEWS article about the awards stated that "Thanks to this campaign, teen sales in 2017 jumped by 37.8%" and that short films produced as part of the campaign received "more than 6.8 million views."  *Id.* at 1.

41.     On October 11, 2018, "Medical Marketing and Media" published an article stating that Align had won an award for its "Invisalign Teen Campaign 2017."  *See* Exhibit C ("Silver Multichannel Campaign of 2018, large product size," Medical Marketing and Media, October 11, 2018).  The article stated that "Engaging teens online and in movie theaters helped Invisalign sales soar by double-digit growth (in the same six-month window)."  *Id.* at 2.

42.     In another example, in 2019, Align's Invisalign® brand was featured as a clue on the popular television gameshow "Jeopardy!".  *See* Exhibit D, p. 1 (January 2, 2020, Facebook post by Align stating "What is… #Invisalign on #Jeopardy?  We loved seeing the Invisalign brand make a special appearance as a clue on the gameshow!").  On information and belief, and according to an article published in the New York Times, as of 2020, "episodes of 'Jeopardy!' averaged 9.4 million viewers in the United States …."  *See* Exhibit E, p. 1 ("Celebrities Are Just the Start of the Expanding 'Jeopardy!'-verse," New York Times, September 25, 2022).

43.     In another example, on October 22, 2020, CNN Business published an article stating that "TikTok superstar Charli D'Amelio … endorses Invisalign to her millions of followers — more than 94 million on TikTok and 31 million on Instagram."  *See* Exhibit F, p. 2 ("Invisalign maker gets big boost from TikTok star Charli D'Amelio," CNN Business, October 22, 2020).

44.     In another example, on December 16, 2021, the National Football League announced that Align's Invisalign® brand sponsored an awards show in conjunction with the Super Bowl for the 2021–22 NFL season.  *See* Exhibit G (https://nflcommunications.com/Pages/KEEGAN-MICHAEL-KEY-RETURNS-TO-HOST-NFL-HONORS-PRESENTED-BY-INVISALIGN.aspx, accessed on April 26, 2024).  During the awards show, surrounded by Invisalign branding, Align Executive Vice President Simon Beard interviewed Jerry Rice, a nationally famous 20-season football player.



([https://www.instagram.com/p/CZ3WMGwrgri/](https://www.instagram.com/p/CZ3WMGwrgri/), accessed April 30, 2024)

45.    Align sponsored these awards and the Super Bowl again for the 2022–23 and 2023–24 seasons.  An official NFL promotional image noting Invisalign® brand sponsorship of Super Bowl LVII for 2022–23 season is shown below.

//

//

//

//

//

//

//

//



46.    Align's website and app metrics further demonstrate that the INVISALIGN Marks are well known not only to dentists and orthodontists but to consumers, including potential patients.  For example, in 2021, Align had more than 20 billion total impressions across all properties globally, 31.4 million website visitors in the Americas, and 2.7 million doctor locator searches in the Americas.  In 2023, Align had more than 22 billion total impressions across all properties globally, 67.9 million website visitors globally, and 350,000 monthly active users of the My Invisalign mobile app globally.

**C.  Defendants' Infringing Conduct**

47.    Defendants advertise and promote themselves as orthodontic service providers.

48.    Defendants feature the INVISALIGN Marks prominently in their advertising and promotional materials, including numerous and prominent instances of use of the INVISALIGN Marks on Defendants' website.  For example, on each page of Defendants' website, Defendants

feature the "INVISALIGN" mark and logo as follows (just above Defendants' own copyright notice):



49.    In another example, on the home page of Defendants' website, Defendants purport to offer "Invisalign®" services using the INVISALIGN Marks as follows:

Exhibit H (https://dischingerteam.com/, accessed on April 12, 2024), p. 3.

50.    In another example, on a page of Defendants' website titled "Your First Visit," visitors to Defendants' website are informed six separate times that they will obtain Invisalign®

services at Dischinger Orthodontics.  Exhibit I (https://dischingerteam.com/your-first-visit/, accessed on April 9, 2024).

51.     First, the "Your First Visit" page of Defendants' website states: "Whether you choose braces, Invisalign, or any other treatment we offer, your orthodontic treatment will be temporary – but the benefits of a new smile will last a lifetime."  Exhibit I, p. 2.

52.     Second, the "Your First Visit" page of Defendants' website also states: "In addition to traditional braces, we're proud to offer a variety of orthodontic alternatives, including the popular Invisalign system.  We'll go over all your options and help you choose the best treatment course for you during your first visit to our office."  Exhibit I, p. 3.

53.     Third, the "Your First Visit" page of Defendants' website also states: "We truly want to do everything we can to help you make a well-informed decision on your orthodontic treatment, so we'll take extra time during your first appointment to fully explain your current orthodontic situation and the treatment options available to you.  We'll go over all of the potential treatments that may work for you, including traditional metal braces, clear braces, Invisalign clear aligners, and any supplementary treatments we feel may be necessary."  Exhibit I, p. 3.

54.     Fourth, the "Your First Visit" page of Defendants' website also includes a "Frequently Asked Questions" section that includes the question "What will I learn from the consultation?"  The answer to this question states, in part, "There are 5 essential questions that we will cover during the consultation: … 2. What treatment options are available to you to correct the problem? (i.e. braces, Invisalign, expander, etc.) …."  Exhibit I, p. 4.

55.     Fifth, the "Frequently Asked Questions" section of the "Your First Visit" page of Defendants' website also includes the question "Are your services provided by orthodontists or

general dentists?"  The answer to this question states, in part, "Our services are provided by orthodontists.  Orthodontists are dentists who, after finishing 4 years of dental school, then went to orthodontic school for another 3 years for extensive training with braces, Invisalign, expanders, bite correction appliances, etc.  The only thing our doctors do – all day, every day – is straighten teeth!  Our orthodontists will straighten teeth on hundreds of patients per year and thousands of patients in their lifetime."  Exhibit I, p. 4.

56.     Sixth, the "Frequently Asked Questions" section of the "Your First Visit" page of Defendants' website also includes the question "How long will I wear braces or Invisalign?" Exhibit I, p. 4.

57.     The same "Frequently Asked Questions" section of the "Your First Visit" page of Defendants' website, including the same references to Invisalign® services described in paragraphs 54–56 above, also appears on several other pages of Defendants' website.

58.     Defendants' website also features a page titled "Invisalign Vs Braces."  This page features 31 instances of use of the INVISALIGN Marks.  For example, the "Invisalign Vs Braces" page shows in part the following:

# Invisalign Vs Braces

Welcome to our comprehensive guide on Invisalign vs. braces! If you're considering orthodontic treatment to achieve that perfect smile, you've likely encountered the dilemma of choosing between Invisalign aligners and traditional braces. This article aims to shed light on the key differences between these two options, empowering you to make an informed decision tailored to your needs.

Orthodontic treatment is not just about aesthetics; it's also about improving oral health and function. With advancements in dental technology, patients now have more choices than ever before. However, navigating the sea of options can be overwhelming, which is why we're here to help.

Throughout this guide, we'll delve into the pros and cons of both Invisalign and braces, considering factors such as effectiveness, comfort, maintenance, and visibility. By the end, you'll have a clearer understanding of which option aligns best with your lifestyle and treatment goals.

Exhibit J (https://dischingerteam.com/invisalign-vs-braces/, accessed on April 9, 2024), p. 1.

59.    The "Invisalign Vs Braces" page of Defendants' website informs prospective patients that they will obtain Invisalign® services at Dischinger Orthodontics, such as by stating, "Ultimately, the choice between Invisalign and braces depends on various factors, including the severity of the orthodontic problem, treatment goals, lifestyle preferences, and budget considerations.  Consulting with an experienced orthodontist, such as those at Dischinger Orthodontics, can help you make an informed decision based on your individual needs and circumstances."  Exhibit J, p. 4.

60.    Defendants' website also features four pages that purport to inform prospective patients about "Invisalign® Spark Clear Aligners" or "Invisalign® Teen Spark Clear Aligners," accessible via the sidebar shown below:

//

//

//

//

//

//

//

//

//

//

//

//



Exhibit K (https://dischingerteam.com/invisalign-info/, accessed on April 9, 2024); Exhibit L
(https://dischingerteam.com/invisalign-teen/, accessed on April 9, 2024); Exhibit M
(https://dischingerteam.com/invisalign-costs/, accessed on April 9, 2024); Exhibit N
(https://dischingerteam.com/invisalign-faqs/, accessed on April 9, 2024).

61.     Each of the four pages of Defendants' website that purport to inform patients
about "Invisalign® Spark Clear Aligners" or "Invisalign® Teen Spark Clear Aligners" convey
that Dischinger Orthodontics is a provider of Invisalign® services and that visitors to
Defendants' website will obtain Invisalign® services at Dischinger Orthodontics.

62.     Defendants are also misleading patients into believing that the "Spark" aligners
that they offer are associated, affiliated, or sponsored by Align and related to the INVISALIGN

brand, thus passing off another, unrelated, clear aligner brand to consumers as though it were

Align's.

63.     For example, part of the page of Defendants' website accessible via the

"Invisalign® Spark Clear Aligners" tab is reproduced below:



Exhibit K, p. 1.

64.     In another example, part of the page of Defendants' website accessible via the

"Invisalign® Teen Spark Clear Aligners" tab is reproduced below:



Exhibit L, p. 1.

65.    Align does not offer or provide dentists and orthodontists with an "Invisalign®
Spark Clear Aligner" product.

66.    Align does not offer or provide dentists and orthodontists with an "Invisalign®
Teen Spark Clear Aligners" product.

67.    "Spark" is the name of a non-Invisalign® clear aligner product offered not by
Align but instead by another unrelated orthodontic clear aligner company, Ormco.

68.    There are substantial differences between the Invisalign® system and Ormco's
Spark clear aligner system.  Both Align and Ormco seek to distinguish their respective products
among their dentist and orthodontist customers.  One such difference is the material used to
manufacture aligners.  Align uses a patented and branded material it calls "SmartTrack®,"
whereas Ormco uses a different material it calls "TruGEN™."  To the extent the Defendants'
"Invisalign® Spark" pages noted above discuss aligner material, they mention only Align's
SmartTrack® material.  *See* Exhibit L, p. 1.

69.    Defendants' website also features a page titled "Portland Orthodontist."  This
page features six instances of use of the INVISALIGN Marks, for example stating "Our Portland
Orthodontist office provide braces, Invisalign, phase one early treatment (i.e. expanders, space
maintainers, headgear, facemasks, etc.), and retainers."  Exhibit O
(https://dischingerteam.com/portland-orthodontist-office/, accessed on April 9, 2024), p. 1.

70.    Additionally, because of Defendants' use of the INVISALIGN Marks on their
website, consumers searching for Invisalign® providers in Lake Oswego, Oregon, on
Google.com (using the search terms "Invisalign provider Lake Oswego") receive a result for
Dischinger Orthodontics.

71.    However, on information and belief, Defendants in fact do not provide the Invisalign® system and have not done so for more than the past four years.

72.    Rather, while trading on the INVISALIGN Marks, including advertising that they provide Invisalign® services at Dischinger Orthodontics via the heavy and prominent use of the INVISALIGN Marks on Defendants' website, on information and belief, Defendants then offer Spark clear aligners provided not by Align but by another, unrelated clear aligner company, Ormco, instead, in a bait-and-switch manner.

73.    On information and belief, Defendants have transitioned their orthodontic practice to providing Spark clear aligners as their only clear aligner product.

74.    Dr. Dischinger stated "I changed over to Spark Clear Aligners … from Ormco in December 2018" in an article in "Orthotown," titled "Industry Insights: Maximizing Practice Efficiency by Dr. Bill Dischinger" and dated October 2020, Exhibit P (https://www.orthotown.com/magazine/article/8115/industry-insights-maximizing-practice-efficiency, accessed on April 10, 2024), p. 3.

75.    In episode 27 of the "Illuminate Orthodontic Podcast," hosted by Dr. Chris Cetta and recorded on March 17, 2023, Dr. Dischinger discussed how and why he switched from providing Invisalign clear aligners to Spark clear aligners.  *See* https://www.illuminateorthopodcast.com/episodes/ep27-dr-bill-dischinger, accessed on April 10, 2024.

76.    On May 5, 2024, Dr. Dischinger gave a presentation at the AAO 2024 conference, the annual meeting of the American Association of Orthodontists, in New Orleans, Louisiana.  In response to a question from an audience member, Dr. Dischinger stated that he does "zero"

Invisalign® cases and instead treats patients with Spark.  As part of his response, Dr. Dischinger also made a hand gesture to indicate "zero."

77.     Defendants have not ordered from Align a set of Invisalign® clear aligners for a new Invisalign® patient since December 2020, and only ordered one set that year.

78.     On information and belief, Dr. Dischinger has a longstanding and lucrative relationship with Spark manufacturer Ormco.

79.     On information and belief, Dr. Dischinger is a "KOL" or Key Opinion Leader for Ormco.

80.     In an article dated November 16, 2019, in Orthodontic Products credited to Dr. Dischinger titled "Finding the Right Aligner Brand for Your Practice," Dr. Dischinger referred to himself as one of Ormco's "key experts."  Exhibit Q (https://orthodonticproductsonline.com/clinical-tips/aligner-treatment/finding-right-aligner-brand-your-orthodontic-practice/, accessed on May 6, 2024), p. 2.

81.     On information and belief and according to data published by the U.S. Centers for Medicare & Medicaid Services, Ormco paid Dr. Dischinger nearly $1.2 million between 2016–2022 for speaking and consulting fees.  Exhibit R (https://openpaymentsdata.cms.gov/physician/1280227, accessed on April 10, 2024), pp. 1-2.

82.     In Dr. Dischinger's article titled "Finding the Right Aligner Brand for Your Practice," Dr. Dischinger also stated that he "was asked by Ormco to do a clinical trial" for Spark clear aligners, prior to Ormco's commercial launch of the Spark clear aligner product in 2019.  Exhibit Q, p. 2.

83.    In December 2022, Ormco hosted a dinner for Dr. Dischinger to commemorate

his having done 1,000 Spark clear aligner cases.  Exhibit S

(https://www.instagram.com/p/CmQJD59rPnn/?img_index=1, accessed on April 19, 2024).



84.    In a video titled "From Old School to Ivy League: A Fireside Chat with Dr. Bill

Dischinger," posted on August 27, 2021 to YouTube on the "OrthoFi" channel, at approximately

33:26–33:40, Dr. Dischinger stated "the marketing dollars that those [clear aligner] companies

are spending absolutely help us.  I mean, they're … marketing for us, you know, they're

spending the marketing dollars that we don't have to, which is great…."  *See*

https://www.youtube.com/watch?v=y7jYWeQVVZg, accessed on April 10, 2024.

85.    On information and belief, Defendants' infringing conduct is willful, including at

least in view of Dr. Dischinger's statements that clear aligner companies are "marketing for us,"

in view of Defendants' use of the registered "®" symbol with "Invisalign®," and in view of Defendants' use of the phrases "Invisalign® Spark Clear Aligners" or "Invisalign® Teen Spark Clear Aligners."

86.     Defendants' unauthorized use of Align's INVISALIGN Marks is likely to cause confusion or mistake among consumers, including prospective patients, as to Defendants' connection or affiliation with Align, as to the source of Defendants' products, and as to Align's sponsorship or approval of Defendants and its products and services.

87.     Defendants' use of Align's INVISALIGN Marks is also false and misleading advertising, suggesting that Defendants are providers of the Invisalign® system, and implying sponsorship, affiliation, approval, or endorsement by Align.

88.     Defendants' advertising that they provide the Invisalign® system, or are affiliated with, related to, or endorsed by Align, is also false and misleading to consumers.  Defendants do not offer the Invisalign® system, and are not affiliated with, related to, or endorsed by Align.

89.     On information and belief, Defendants' infringing acts are intentional and willful, intended to lure patients into believing that Defendants can and/or will provide the Invisalign® system and be backed by Align's reputation and support, while all along Defendants intend to substitute Spark clear aligners in place of the Invisalign® system.

## HARM TO CONSUMERS AND TO ALIGN

90.     Defendants' misuse of Align's registered and famous INVISALIGN Marks is both confusing and misleading to consumers, and as a result is harmful to consumers and contrary to the intent of the trademark law, which is specifically designed to counter such confusion.

91.     Defendants' conduct either baits consumers into coming to their clinic, with the offer of INVISALIGN products and services, and then switches those consumers to the Ormco Spark system, or passes the Spark aligners off as Align's, or both.  Both are extremely harmful to consumers, who may not understand the source of the products they are purchasing.

92.     Indeed, this may be even more harmful in dentistry, because patients trust dentists more than other professions.  *See* https://news.gallup.com/poll/1654/Honesty-Ethics-Professions.aspx, accessed on May 1, 2024.

93.     Defendants' conduct has caused and will continue to cause consumer confusion and harm if not enjoined.  Accordingly, Align seeks injunctive relief stopping Defendants' unlawful trademark infringement, false advertising and passing off.

94.     On information and belief, Defendants' conduct has also caused harm to Align, including loss of goodwill, reputational harm, and loss of sales.

95.     Based on a reasonable estimate using available information, Align anticipates that its damages for Defendants' unlawful and infringing activity in this matter will be substantial.

96.     Based on Dr. Dischinger's public statements, Defendants began providing patients with Spark clear aligners rather than Invisalign® clear aligners (while nevertheless continuing to promote Defendants' services using the INVISALIGN Marks) in December 2018 (*see* Exhibit P, p. 3), and Defendants had performed 1,000 Spark cases as of December 2022 (*see* Exhibit S).  Accordingly, it is reasonable to assume Defendants also performed at least 250 Spark cases in 2023, for a total of at least 1,250 Spark cases by the end of that year.  On information and belief including these reasonable assumptions, Align will be entitled to recover in excess of $7 million in Defendants' profits for Defendants' past infringement.

97.    Furthermore, Align anticipates these damages awards will be trebled under the Lanham Act and O.R.S. § 647.105 because Defendants' infringement is and was willful and also because Defendants' activities constitute counterfeiting.

## COUNT I

## Trademark Infringement in Violation of 15 U.S.C. § 1114

98.    Plaintiff Align realleges and incorporates by reference paragraphs 1–97 as though fully set forth herein.

99.    Align owns the federally registered trademarks for the INVISALIGN Marks as identified above, as well as common law rights in these marks.

100.    Without Align's consent, Defendants have used the INVISALIGN Marks in commerce to advertise and offer Defendants' products and services.

101.    Defendants' infringing actions as described herein have caused and/or are likely to cause confusion, mistake, and/or deception among ordinary consumers as to the source, sponsorship, affiliation, or approval of Defendants' products and/or cause confusion or mistake as to an affiliation, connection, or association between Align and Defendants, in violation of at least 15 U.S.C. § 1114(1)(a) and (b).

102.    On information and belief, Defendants have made and will continue to make substantial profits and gains as a result of their infringing activities.

103.    Align has been and will continue to be damaged and irreparably harmed by Defendants' actions, which will continue unless Defendants are enjoined by this Court.

104.    Align has no adequate remedy at law in that the amount of damage to Align's business, reputation, and diminution of the INVISALIGN Marks' goodwill is difficult to

ascertain with specificity.  Align is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

105.    Align is entitled to recover from Defendants all damages Align has sustained and will sustain as a result of Defendants' infringement, and all profits, gains, and advantages obtained by Defendants as a result thereof, in an amount to be determined at trial.

106.    Pursuant to 15 U.S.C. § 1117, Align is entitled to recover its costs and attorneys' fees because this is an exceptional case.

## <u>COUNT II</u>

### <u>Trademark Counterfeiting in Violation of 15 U.S.C. § 1114</u>

107.    Plaintiff Align realleges and incorporates by reference paragraphs 1–97 as though fully set forth herein.

108.    Align owns the federally registered INVISALIGN Marks, as described above, as well as common law rights in those marks.

109.    Without Align's authorization or consent, Defendants have used identical or substantially indistinguishable copies of the INVISALIGN Marks in commerce to advertise, offer for sale, sell and/or distribute non-Invisalign® services and products.

110.    On information and belief, Defendants intentionally and willfully used the INVISALIGN Marks knowing such designation to be counterfeit in connection with the sale, offering for sale or distribution of non-Invisalign® services and goods.

111.    Defendants' actions constitute trademark counterfeiting in violation of at least 15 U.S.C. § 1114(1)(a) and (b).

112.    On information and belief, Defendants have made and will continue to make substantial profits and gains as a result of their counterfeiting activities.

113.    Align has been and will continue to be damaged and irreparably harmed by Defendants' actions, which will continue unless Defendants are enjoined by this Court.

114.    Align has no adequate remedy at law in that the amount of damage to Align's business, reputation, and diminution of the INVISALIGN Marks' goodwill is difficult to ascertain with specificity.  Align is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

115.    Align is entitled to recover from Defendants all damages, including attorneys' fees, that Align has sustained and will sustain as a result of Defendants' counterfeiting activities, and all profits, gains, and advantages obtained by Defendants as a result thereof, in an amount to be determined at trial, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and or/statutory damages pursuant to 15 U.S.C. § 1117(c).

### **COUNT III**

### **Trademark Dilution in Violation of 15 U.S.C. § 1125(c)**

116.    Plaintiff Align realleges and incorporates by reference paragraphs 1–97 as though fully set forth herein.

117.    Align owns the federally registered INVISALIGN Marks, as described above, as well as common law rights in those marks.

118.    The INVISALIGN Marks have become famous throughout the United States due to the duration, extent, and geographical reach of advertising and publicity, the amount, volume, and geographical extent of Align's sales, the INVISALIGN Marks' degree of recognition, and the registration of the INVISALIGN Marks.

119.    Align's INVISALIGN Marks have been in use by Align, and have been famous and distinctive continuously for many years, prior to Defendants' improper and unlawful infringement of those marks.

120.    Without Align's authorization or consent, Defendants have used and continue to use the INVISALIGN Marks in commerce in a manner that dilutes the distinctive quality, and harms the reputation, of the INVISALIGN Marks.

121.    Defendants' unauthorized use of Align's INVISALIGN Marks is likely to cause consumers to mistakenly associate the INVISALIGN Marks with Defendants' services, and thereby to impair the distinctiveness of the INVISALIGN Marks, which have a high degree of distinctiveness and a high degree of recognition following Align's substantially exclusive use of the INVISALIGN Marks in extensive, long-term, and broad advertising and promotion and extensive sale of goods and services under the INVISALIGN Marks, and which, on information and belief, Defendants used with the intent to create an association with the INVISALIGN Marks, such an association actually having been created among consumers of Defendants' services.

122.    Defendants' unauthorized use of Align's INVISALIGN Marks is likely to harm Align's reputation because Defendants do not provide the Invisalign® system, but rather provide a different, non-Invisalign® clear aligner.

123.    Defendants' actions further dilute Align's INVISALIGN Marks by falsely attributing the quality of Defendants' products and services to Align's products and services by their misleading use of the INVISALIGN marks.

124.    Defendants' acts as alleged herein occurred after the INVISALIGN Marks became famous, and constitute dilution in violation of 15 U.S.C. § 1125(c).

125.    On information and belief, Defendants' acts of dilution are willful, deliberate, and in bad faith.

126.    Align has been and will continue to be damaged and irreparably harmed by Defendants' actions, which will continue unless Defendants are enjoined by this Court.

127.    Align has no adequate remedy at law, and is therefore entitled to injunctive relief. Align is also entitled to recover Align's actual damages and Defendants' profits, as well as costs and attorneys' fees under 15 U.S.C. §§ 1025(c), 1116, and 1117.

**COUNT IV**

**False Designation of Origin / False Advertising in
Violation under 15 U.S.C. § 1125(a) (Passing Off)**

128.    Plaintiff Align realleges and incorporates by reference paragraphs 1–97 as though fully set forth herein.

129.    Align owns the federally registered trademarks for the INVISALIGN Marks as identified above, as well as common law rights in these marks.

130.    Without Align's consent, Defendants have used the INVISALIGN Marks in interstate commerce to advertise and offer Defendants' products and services.

131.    On information and belief, Defendants have also passed off unrelated third party products that compete with the INVISALIGN clear aligner system as being Align's, or affiliated, associated or sponsored by Align.

132.    Defendants' actions as described herein constitutes a false designation of origin that has caused and/or is likely to cause confusion, mistake, and/or deception among ordinary consumers as to the source, sponsorship, affiliation, or approval of Defendants' products and/or cause confusion or mistake as to an affiliation, connection, or association between Align and Defendants, in violation of 15 U.S.C. § 1125(a).

133.     Defendants' use of Align's INVISALIGN Marks as described above constitutes false and misleading statements of fact, to wit at least that Defendants will provide consumers with the Invisalign® system, when in fact they do not.

134.     Defendants' statements on their website constitute commercial advertising and promotion of Defendants' services under 15 U.S.C. § 1125(a).

135.     On information and belief, Defendants' false and misleading statements are material to consumers in their determination of which licensed dentist or orthodontist to select, and ultimately what aligner system/teeth straightening treatment to purchase and use.

136.     On information and belief, Defendants engage in these acts with the intent to deceive consumers, and Defendants' false and misleading statements have actually deceived and have the tendency to deceive such consumers.

137.     Defendants caused their false and misleading statements to enter interstate commerce, for example, on Defendants' website.

138.     On information and belief, Defendants have made and will continue to make substantial profits and gains as a result of their false advertising and false designation of origin.

139.     Align has been and will continue to be damaged and irreparably harmed by Defendants' actions, which will continue unless Defendants are enjoined by this Court.

140.     Align has no adequate remedy at law in that the amount of damage to Align's business, reputation, and diminution of the INVISALIGN Marks' goodwill is difficult to ascertain with specificity.  Align is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

141.     Align is entitled to recover from Defendants all damages that Align has sustained and will sustain as a result of Defendants' false advertising and false designation of origin activities, and all profits, gains, and advantages obtained by Defendants as a result thereof, in an

amount to be determined at trial, as well as the costs of this action and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT V

### Common Law Trademark Infringement and Unfair Competition

142.    Plaintiff Align realleges and incorporates by reference paragraphs 1–97 as though fully set forth herein.

143.    Align owns the federally registered trademarks for the INVISALIGN Marks as identified above, as well as common law rights in these marks, including in Oregon.

144.    Without Align's consent, Defendants have used the INVISALIGN Marks in commerce to advertise and offer Defendants' products and services in Oregon.

145.    Defendants' infringing actions as described herein have caused and/or are likely to cause confusion, mistake, and/or deception among ordinary consumers as to the source, sponsorship, affiliation, or approval of Defendants' products and/or cause confusion or mistake as to an affiliation, connection, or association between Align and Defendants, in violation of the Oregon common law of trademark infringement and unfair competition.

146.    On information and belief, Defendants have made and will continue to make substantial profits and gains as a result of their infringing activities.

147.    Align has been and will continue to be damaged and irreparably harmed by Defendants' actions, which will continue unless Defendants are enjoined by this Court.

148.    Align has no adequate remedy at law in that the amount of damage to Align's business, reputation, and diminution of the INVISALIGN Marks' goodwill is difficult to ascertain with specificity.  Align is therefore entitled to injunctive relief.

149.    Align is entitled to recover from Defendants all damages Align has sustained and will sustain as a result of Defendants' infringement, and all profits, gains, and advantages obtained by Defendants as a result thereof, in an amount to be determined at trial.

## COUNT VI

### Trademark Dilution in Violation of O.R.S. § 647.107

150.    Plaintiff Align realleges and incorporates by reference paragraphs 1–97 as though fully set forth herein.

151.    Align owns the federally registered INVISALIGN Marks, as described above, as well as common law rights in those marks, including in Oregon.

152.    The INVISALIGN Marks have become famous throughout the United States, including in Oregon, due to the duration, extent, and geographical reach of advertising and publicity, the amount, volume, and geographical extent of Align's sales, the INVISALIGN Marks' degree of recognition, and the registration of the INVISALIGN Marks.

153.    Align's INVISALIGN Marks have been in use by Align, and have been famous and distinctive continuously for many years, including in Oregon, prior to Defendants' improper and unlawful infringement of those marks.

154.    Without Align's authorization or consent, Defendants have used and continue to use the INVISALIGN Marks in commerce, in Oregon, in a manner that dilutes the distinctive quality, and harms the reputation, of the INVISALIGN Marks.

155.    Defendants' unauthorized use of Align's INVISALIGN Marks is likely to cause Oregon consumers to mistakenly associate the INVISALIGN Marks with Defendants' services, and thereby to impair the distinctiveness of the INVISALIGN Marks, which have a high degree of distinctiveness and a high degree of recognition following Align's substantially exclusive use of the INVISALIGN Marks in extensive, long-term, and broad advertising and promotion and

extensive sale of goods and services under the INVISALIGN Marks, and which, on information and belief, Defendants used with the intent to create an association with the INVISALIGN Marks, such an association actually having been created among consumers of Defendants' services.

156.    Defendants' unauthorized use of Align's INVISALIGN Marks is likely to harm Align's reputation, including in Oregon, because Defendants do not provide the Invisalign® system, but rather provide a different, non-Invisalign® clear aligner.

157.    Defendants' actions further dilute Align's INVISALIGN Marks by falsely attributing the quality of Defendants' products and services to Align's products and services by their misleading use of the INVISALIGN marks.

158.    Defendants' acts as alleged herein occurred after the INVISALIGN Marks became famous, including in Oregon, and constitute dilution in violation of O.R.S. § 647.107.

159.    On information and belief, Defendants' acts of dilution are willful, deliberate, and in bad faith.

160.    Align has been and will continue to be damaged and irreparably harmed by Defendants' actions, which will continue unless Defendants are enjoined by this Court.

161.    Align is entitled to injunctive relief under O.R.S. § 647.107 and, because Defendants acted willfully, to Defendants' profits, actual damages, trebled profits and damages, punitive damages, and costs and attorney's fees under O.R.S. § 647.105.

## **PRAYER FOR RELIEF**

WHEREFORE, Align prays that this Court enter judgment against Defendants as follows:

A.      Permanent injunctive relief, enjoining and prohibiting Defendants, their agents, servants, employees, officers, attorneys, subsidiaries, successors and assigns, and all others in active concert with Defendants, from:

        a.      Using the INVISALIGN Marks, or any confusingly similar marks;

        b.      Passing off their product or any competitor's or other party's product as though it is, or is affiliated or associated with, or sponsored by, Align;

        c.      Assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities described in paragraphs A(a)-(b) above;

B.      An award of damages in an amount to be determined at trial;

C.      An award of treble damages as provided by the Lanham Act and O.R.S. § 647.105;

D.      An award of attorneys' fees and costs;

E.      An award of punitive damages in an amount to be determined at trial; and

F.      Any further relief the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Align hereby demands a jury trial of this matter.

May 7, 2024                                        Respectfully Submitted,


                                         *s/ Klaus H. Hamm*
                                         Klaus H. Hamm, OSB No. 091730
                                         klaus.hamm@klarquist.com
                                         KLARQUIST SPARKMAN, LLP
                                         121 S.W. Salmon St., Ste. 1600
                                         Portland, Oregon 97204
                                         Telephone: (503) 595-5300
                                         Facsimile: (503) 595-5301

Jennifer Seraphine (*pro hac vice* to be filed)
seraphine@turnerboyd.com
Jacob Zweig (*pro hac vice* to be filed)
zweig@turnerboyd.com
TURNER BOYD SERAPHINE LLP
155 Bovet Road, Suite 750
San Mateo, California 94402
Tel: (650) 521-5930
Fax: (650) 521-5931

Attorneys for Plaintiff Align Technology,
Inc.